FALL RIVER IRON WORKS COMPANY *vs.* OLD COLONY AND FALL RIVER RAILROAD COMPANY.

The remedy under Gen. Sts. *c.* 145, § 16, by an application for leave to file an information in the nature of a *quo warranto* to redress an injury to private rights or interests by the exercise by a private corporation of a franchise or privilege not conferred by law, does not deprive this court of its jurisdiction in equity in case of a private nuisance.

Under a charter which fixes one terminus of a railroad at or near a certain point, a large discretion is conferred upon the railroad company in locating their road, the exercise of which will not be revised by this court unless they have clearly exceeded its just limits or acted in bad faith; and where a charter authorizes a railroad company to extend, locate, construct and maintain a railroad "from a point at or near the present terminus of its track in Fall River, in a southerly direction, to the line of the State of Rhode Island," a location starting at a point 2475 feet, by the line of the railroad, northerly from the termination of the old track is authorized.

An unrestricted grant of authority to construct a railroad from one designated point to another carries with it the authority to cross a navigable stream, if the railroad cannot reasonably be constructed without doing so.

BILL IN EQUITY by a corporation having its principal place of business in Fall River, averring that the defendants, before the year 1861, in pursuance of authority duly granted by the legislature, had laid out and constructed a railroad commencing at a wharf of the plaintiffs in Fall River called the New Steamboat Wharf, situated about fifty rods south from the mouth of the Fall River stream, and thence running northerly and by various courses to Boston; that the plaintiffs are seised in fee and possessed of the land and a continuous wharf thereon, about two hundred feet in length, on the westerly side of the Fall River stream, and of the lands and wharves on the southerly side of the stream to the place where the same empties into Mount Hope Bay, and thence on the shore of Mount Hope Bay to the said Steamboat Wharf; that Fall River stream is navigable and in great use by the plaintiffs and others for the passage

19 *

of vessels; that the defendants, in constructing their railroad from Fall River to Boston, crossed said stream above the highest place where it was navigable for vessels; that by *St.* 1861, *c.* 156, the defendants were authorized to extend, locate, construct and maintain a railroad from a point at or near the present terminus of their track in Fall River, in a southerly direction, to the line of the State of Rhode Island, to connect with a railroad to be constructed from Newport in the State of Rhode Island to the line of this commonwealth; that on the 9th of December 1861 the defendants filed the location of their railroad under said act, a copy of which was annexed to the bill; that in and by said doings the defendants have commenced the construction of their railroad from a point remote from the present terminus of their track in Fall River, in a northerly direction therefrom, and that the continuance thereof is through and over portions of the lands of the plaintiffs not contemplated or authorized by the provisions of said act; that the defendants have also laid out and located their railroad over and across the Fall River stream, where the same is navigable, and over a corner of the plaintiffs' land and wharf thereon; that by the true construction of *St.* 1861, *c.* 156, the defendants have no authority to lay out or construct their railroad over said navigable stream, and that the act of building the same as located would be a public nuisance. The prayer was for an injunction restraining the defendants from obstructing the Fall River stream at the place aforesaid, and from committing any nuisance to the wharf and lands of the plaintiffs, and for other and further relief.

It appeared by the evidence in the case that the point of departure of the railroad authorized by *St.* 1861, *c.* 156, according to the location filed by the defendants, was 2475 feet, by the line of the railroad, northerly from the termination of the old track; and much evidence was taken of engineers and others as to the practicability of various routes under the authority of said statute, which it is unnecessary to recite in full. The case was reserved by *Hoar*, J. for the determination of the whole court.

*J. H. Clifford & E. Ames*, for the plaintiffs. The defendants

had no authority under the statute to commence the extension of their road at a point northerly from the present terminus. *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 340, 367. *Brigham* v. *Agricultural Branch Railroad*, 1 Allen, 316. No authority was given to cross navigable water, and the construction of the road upon the defendants' location is a public nuisance, for which the plaintiffs, having interests affected by it distinct from those of the public, are entitled to their remedy in equity. *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 346. *Hood* v. *Dighton Bridge*, 3 Mass. 263, 267. *Commonwealth* v. *Charlestown*, 1 Pick. 180, 185. *Kean* v. *Stetson*, 5 Pick. 492. *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 376, 397. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63. *Corning* v. *Lowerre*, 6 Johns. Ch. 439. No authority to cross navigable water can be implied by the terms of the statute. Statutes conferring great powers should be construed strictly. Dwarris on Statutes, (2d ed.) 648, and cases cited. The evidence taken by the parties is of no value in determining the judicial construction of the act, as no right to cross tide-water can be implied, unless from indisputable necessity, in order to make the grant available. The court will not undertake to settle a question of engineering. *Webb* v. *Manchester & Leeds Railway*, 4 Myl. & Cr. 118, 119, 120. [Here followed a discussion of the evidence.]

*S. Bartlett & J. G. Abbott*, (*B. Dean* with them,) for the defendants, cited, upon the main questions, *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 364–367; *Commonwealth* v. *Fitchburg Railroad*, 8 Cush. 240; *Commonwealth* v. *Boston & Maine Railroad*, 3 Cush. 47; *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 23 Pick. 360; *Attorney General* v. *Stevens*, Saxton's Ch. (N. J.) 369; *People* v. *Saratoga, &c. Railroad*, 15 Wend. 130; *White River Turnpike* v. *Vermont Central Railroad*, 21 Verm. 590; *Newcastle, &c. Railroad* v. *Peru, &c. Railroad*, 3 Indiana, 464; *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63.

BIGELOW, C. J.    So far as this bill seeks to enforce a remedy in behalf of the plaintiffs to prevent the defendants from

erecting a bridge and constructing a railroad over tide-waters, and thereby creating a public nuisance by causing an obstruction to navigation, it cannot be maintained. The plaintiffs do not allege that such obstruction will cause any special or peculiar damage to them, nor is it made to appear by the evidence that they will sustain any injury thereby, differing in kind from that which will be suffered by all others who may have occasion to use said waters for purposes of navigation. The fact that the loss or injury incurred by the plaintiffs will be much greater in degree than that which may be sustained by others from the same cause furnishes no ground on which they can found a claim for a private remedy. The wrong is a public one, and it must be redressed, if. at all, by a public prosecution, or by a proceeding in which the rights of all persons may be vindicated and upheld. *Brainard* v. *Connecticut River Railroad*, 7 Cush. 506, 510. *Blood* v. *Nashua & Lowell Railroad*, 2 Gray, 140. *Lawrence* v. *Fairhaven*, 5 Gray, 110. *Hartshorn* v. *South Reading*, 3 Allen, 501. *Willard* v. *Cambridge*, Ib. 574.

But the bill alleges with sufficient certainty and precision another cause of injury to the rights and property of the plaintiffs, which, if well founded, affords sufficient ground for the maintenance of this suit, and for granting relief in equity. It sets forth that the plaintiffs are owners of " land and a continuous wharf thereon ; " that the defendants, without right or authority of law, have commenced the extension, location and construction of their railroad through and over portions of said land, passing through a corner thereof and of the wharf thereon erected, and that they are proceeding to cut off the cap-sill of said wharf and to dig up the earth thereof, with a design to erect permanent structures for the maintenance and use of their said railroad in, upon and over said land and wharf. There can be no doubt that these allegations, if sustained, establish a clear case of a private nuisance, which, if continued and completed, would work serious injury and damage to the land and wharf of the plaintiffs. Upon familiar principles, such a case s cognizable and relievable by proceedings on the equity side of the court.

It was suggested by the learned counsel for the defendants, that the court should decline to take cognizance of this case for the reason that the plaintiffs have a complete and adequate remedy at law for the grievances stated in the bill under Gen. Sts. *c.* 145, § 16, by filing an information in the nature of a *quo warranto*, inasmuch as the real cause of complaint on the part of the plaintiffs is, that their private rights and interests are injured or put in hazard by the exercise by the defendants of a franchise or privilege not conferred by law. Assuming that this objection is seasonably taken, it seems to us to be entirely untenable. The remedy by a *quo warranto* is not adequate and complete. In the first place, it is not available to a party as a matter of right. He cannot obtain relief at all, unless he can first obtain leave of the court to commence the proceeding by filing an information. But a more decisive answer is, that such a proceeding would afford no remedy to the plaintiffs for the damages they have already suffered by the wrongful acts of the defendants. The only judgment which the court have power to enter under a *quo warranto* prosecuted by a private individual is, perpetually to exclude a corporation from the exercise of the unlawful privilege or franchise. Gen. Sts. *c.* 145, § 22. The relief, therefore, under such a proceeding would be very partial and imperfect. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1, 22.

Turning now to the merits of the case as disclosed by the pleadings and evidence, we are to consider whether the defendants have violated any right of the plaintiffs, or committed any act of trespass or nuisance on their property, as alleged in the bill. The determination of this question depends mainly on the true interpretation of the first section of the act of the legislature by which the defendants are authorized to extend their railroad to the line of the State of Rhode Island. *St.* 1861, *c.* 156. The authority thereby conferred is expressed in terms somewhat loose and indeterminate. It is to locate, maintain and construct a railroad from a point at or near the present terminus of the track of the defendants' railroad in Fall River in a southerly direction to the line of the State of Rhode Island, to connect

with a railroad to be constructed from Newport in the State of Rhode Island to the line of the State of Massachusetts. One of the main grounds of the plaintiffs' complaint is, that the defendants have exceeded the authority thus conferred, by locating their road and commencing its construction at a point so far distant from the present terminus of their track that it cannot in any just or proper sense be held to be near thereto, but that it is in fact remote therefrom, and clearly without the limits intended to be fixed by the legislative grant, and that by reason of such excess of authority they have unlawfully entered upon and taken their land.

In seeking for a correct and just exposition of this clause of the statute, the first and most obvious suggestion is, that the legislature did not intend to fix with absolute certainty and precision the point of departure for the new road which the defendants were authorized to build. In using language which was so vague and indefinite as to leave open for future determination the location of this point, it is clear that owing to the nature of the ground or for some other sufficient reason it was not deemed expedient or necessary to fix it with accuracy. It is also clear that in thus omitting to designate it, it was their intention to delegate the power of locating it definitively to the defendants or their agents, and to vest in them the exercise of the needful judgment and discretion to carry into effect the authority which they intended to grant. It follows, that unless the defendants have clearly exceeded the limits of this discretion, and have acted either in bad faith or in disregard of the just limits which by a reasonable construction of the words of the statute should be put on their power to fix the *terminus a quo*, they cannot be deemed to have invaded the plaintiffs' rights, or be held amenable to process restraining them from prosecuting their work and constructing their road according to the plan and location set out and described in the bill.

If we look to the language of the statute, it is impossible to find in that clause, which empowers the defendants to establish the point of departure of the road, any fixed or definite rule or standard of measurement or distance by which they are to be

governed. They are authorized to commence at a given point or near it. If they embrace the latter alternative, a wide range is necessarily left open to them. The word " near," as applied to space, can have no positive or precise meaning. It is a relative term, depending for its signification on the subject matter in relation to which it is used and the circumstances under which it becomes necessary to apply it to surrounding objects. One of the definitions which lexicographers give to it is " not distant from " — a paraphrase which serves to illustrate the vagueness of its meaning. It may be appropriately used to designate distances which, of themselves, widely differ. A town may be properly said to be near to another town or city, if it is within a distance of a few miles; but if a house is spoken of as near to another, it signifies that it is within a few feet or rods, if within the limits of a city or thickly settled village, or within a fraction of a mile, if in the country where the population is more sparse. So an article of furniture is said to be near to a person or object in the same room, if distant therefrom only a few inches. These illustrations serve to show that the word appropriately expresses a different measure of distance according as it is applied to different objects or subjects. When used to designate and describe the location of a line of railroad, it cannot be interpreted as having any narrow or restricted meaning. It has already been held, in a case where a railroad, by the terms of the act creating a corporation, was required to pass near the westerly part of a town, that the road was located within the prescribed limits, although its nearest point was two hundred rods distant from a corner of such town. *Boston & Providence Railroad* v. *Midland Railroad,* 1 Gray, 340, 367. In the case now before us, the distance from the given point near to which the road is required to start is much less than that which received the sanction of this court in the case cited Nor are we able to see that there are any circumstances or facts in connection with the location of the road or the place through which it is to pass, which sustain the position that the defendants have exceeded the authority vested in them by their charter. On the contrary, it seems to us that there are strong

reasons for believing that they have acted in good faith and with due discretion, and have fixed their point of departure at a distance which does not exceed the prescribed limits. The evidence tends strongly to prove this. The location is through the heart of a city ; the new road is to be a short one, and to be constructed within a confined space in such manner that the .ine of the defendants' old road may conveniently connect with another road for the purpose of forming a continuous route of travel. It was necessary to avoid inconvenient and dangerous curves, and to pass the highways and streets of the city, which were numerous and some of them much frequented, so as to insure speed and safety, and to avoid disturbing the drainage of the city by embankments or other structures. Taking into view these and other similar considerations, which must necessarily enter into and form the basis of a sound judgment in the location of the defendants' road, we are unable to say that in selecting their route they have gone beyond the power which was delegated to them by their charter. We are confirmed in this view by the fact that other routes, which have been suggested by the plaintiffs as practicable in lieu of the one adopted by the defendants, commence several hundred feet distant from the terminus of the present track, thereby admitting the necessity of a wide departure from the point designated in the charter.

But it is strenuously urged in behalf of the plaintiffs that the location of the road across their land and wharf is illegal, because it cannot be thus constructed and maintained without crossing tide-waters and causing an obstruction to a navigable stream, and that no such authority is conferred on the defendants by the act authorizing the extension of their road. It is true that no express authority to pass over navigable water is given by the legislature. It exists, if at all, by implication. But we cannot doubt that where an unrestricted grant of power is made to a corporation to construct a road between two points, it carries with it the right to cross navigable waters, if they intervene in a course or route which is otherwise reasonable and practicable, and if the road can be constructed without destruction of

the public easement or seriously impairing its convenient enjoyment and use. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63, 72. This proposition is not denied by the plaintiffs. They rest their objection solely on the ground that no such power can be derived in the present case by implication. To this we think one sufficient answer is, that as the defendants have taken their initial point within the limits specified in the grant, and have laid out their road thence in a reasonably direct course to the line of the state at the place where it meets the road in Rhode Island, they have strictly complied with the terms of their charter. This seems to follow necessarily, inasmuch as two points are established as being within the prescribed limits, and there are no restrictions imposed on any route which is reasonably direct between these two points. But a better and more decisive answer to the objection is found in the fact that express authority is given to the defendants to begin their new road at the terminus of the old one and to locate it thence to the line of the state. This cannot be done without crossing tide-waters. Such is the testimony of one of the engineers, and it is plainly shown to be so by an inspection of the map. And yet no authority to cross tide-waters is expressly given, which clearly shows the intent of the legislature that the defendants should exercise the power, if it became necessary or expedient in constructing their road from any point which might fairly be deemed to be within the general terms of the grant. There are other minor considerations which lead to the same result, but they would add but little if any strength to a conclusion which is founded on so plain and unequivocal a manifestation of the intent of the legislature.

It was also suggested by the counsel for the plaintiffs that the defendants, under the clause which gave them authority to commence their road at a point near the terminus of their present track and thence proceed in a southerly direction, had no authority to begin at a point northerly of such terminus. We do not see how the plaintiffs' rights are in any way affected, if in this respect the defendants have acted without authority. But there is no foundation for the suggestion. Nothing in the act requires

that the point of departure should be southerly of the present terminus. The only requirement is that it should be near thereto. If it is fixed within proper limits, it may be in any direction from the terminus, and the road is to be constructed thence in a southerly direction.

On the whole case, we are of opinion that the defendants have not exceeded their lawful authority in constructing their road on the plaintiffs' land and over their wharf, and that there is no case shown which entitles the plaintiffs to any relief in equity. *Bill dismissed.*