# CHARLESTON.

WARD et als. v. BOARD OF EDUCATION et als.

Submitted May 8, 1917.    Decided May 15, 1917.

1. SCHOOLS AND SCHOOL DISTRICTS—*Consolidation of Sub-Districts—*
   *Location of Graded School.*

   When the petition of the voters of two sub-districts, addressed
   to the board of education, requests and consents to the consolida-
   tion of said sub-districts into one sub-district, and the establish-
   ment therein of a graded school, pursuant to section 68, chapter
   45, of the Code, at or near a particular place designated, the loca-
   tion of such graded school building within a half mile of the
   place so designated, considering the indefinite language of said
   petition, and all the facts and circumstances connected therewith,
   constitutes a reasonable interpretation of the prayer of said
   petition. (p. 544).

2. SAME—*Board of Education—Transaction of Business—Notice.*

   As provided by section 32, chapter 45, of the Code, a board of
   education is prohibited from transacting any official business ex-
   cept when regularly assembled as a board, and, with the exception
   noted in the statute, it can act officially only when assembled as
   a board and after due notice to all the members thereof. (p. 546).

Appeal from Circuit Court, Wayne County.

Suit by B. H. Ward and others for injunction against the
Board of Education and others.    Decree for plaintiffs, and
defendants appeal.

    *Reversed, injunction dissolved, bill dismissed.*

*Marcum & Marcum, D. B. Hardwick* and *C. W. Ferguson,*
for appellants.

*E. J. Wilcox* and *J. M. Rigg,* for appellees.

MILLER, JUDGE:

Defendants move to reverse the decree which, on bill, an-
swer, and proofs taken, adjudged that defendant, the Board
of Education of Union District, Wayne County, be and was
thereby perpetually enjoined, restrained and inhibited from
discontinuing the free school, theretofore run, operated, con-
ducted, and maintained in sub-district number four of said

district, and from selling or further attempting to sell the one room school building, situate therein, provided that said decree should not be so construed as to prevent defendant from discontinuing said one room school and from selling said school building should conditions thereafter be such as to render such discontinuance and sale proper. And said decree also contained a mandatory injunction requiring and directing said defendant thereafter to run, operate, conduct, and maintain said one room school in said sub-district, the same as it had theretofore been run, operated, conducted, and maintained, until the same should be discontinued in the manner provided by law. But it was further provided that nothing therein contained should prevent defendant from maintaining the graded school known as Dickson-Mays Graded School, provided a sufficient attendance should be maintained therein to warrant the maintenance thereof.

The preliminary injunction awarded in accordance with the prayer of the bill undertook to restrain defendant from attempting to consolidate sub-districts numbers three and four in said Union District into Sub-District Number —, and from consolidating or further attempting to consolidate the one room schools theretofore run and conducted in said sub-districts numbers three and four into said graded school, known as Dickson-Mays Graded School; and also from selling or taking any further steps towards the sale of the one room school building situated in said sub-district number four, until the further order of the court.

Plaintiffs, eleven in number, sued as residents, tax payers, and voters of said sub-district number four, and also as patrons of the school established therein, and the principal ground on which they sought the injunctive relief prayed for, was that the defendant board of education, pretending and attempting to proceed under section 68, chapter 45, Barnes' Code, without having obtained the written consent of at least a majority of the voters of said sub-district number four, was proceeding to consolidate said sub-districts numbers three and four into one sub-district and to establish a graded school therein, to be known as Dickson-Mays Graded School, and to discontinue the other schools therein, and to sell the

school buildings theretofore maintained and operated in said sub-districts.

The answers and proofs taken, it seems to us, constitute a complete refutation of every material fact alleged and relied on to support the bill. The statute, section 68, chapter 45, of the Code, provides: "Boards of education shall have authority to consolidate two or more sub-districts into a single sub-district, and where practicable establish a graded or con-. solidated school therein, and if necessary, provide for the transportation of pupils to and from such school at public expense; provided, that no sub-district whose school during the last preceding school year maintained an average daily attendance of twelve or more, shall be consolidated with another sub-district except with the written consent of at least a majority of the voters of the sub-district affected. Contracts for the transportation of pupils shall be let to the lowest responsible bidder, and all expenses shall be paid out of the building fund of the district, under such rules and regulations as the board of education may prescribe."

The answer and proof is that prior to any action taken by said board of education towards consolidating said sub-districts into a single sub-district, and to establish a graded consolidated school therein, the voters of said sub-districts number three and four, with a single exception, unanimously petitioned said board, in writing, "to abolish the one room schools" therein and to consolidate them into a two room graded school to be built on a good and suitable location at or near Dunkle Bros. store", and that such action should be taken immediately, so that a term of school for the year 1915-1916 could be taught therein.

The record shows that the board of education immediately acted favorably on this petition, and in July met twice at Dunkle Brothers store in connection with representatives of the petitioning voters, with whom they conferred in reference to a site or location for the new school building, and that the petitioners present not being able to agree on any particular site, agreed to leave it to the judgment of the board of education, who, considering the liability of the land in the vicinity of the Dunkle Brothers store to overflow, and its

rough and hilly character, finally selected and purchased a site about a half mile from this store, in what is locally described as the lower end of the B. A. McGinnis farm, and which all agree is well and centrally located in the consolidated district, and that soon afterwards they acquired a deed for the lot, obtained plans for the new building, advertised for bids, and let the contract for the construction of the building to the lowest and best bidder, and the building was completed and paid for and made ready for occupancy.

We do not think there can be any doubt from the evidence, that the board of education made the best and most suitable location for the new school building. Much complaint is made that the children from sub-district number four will be compelled to travel a bad piece of road between Dunkle Brothers store and the new school building; but if it had been located exactly on the site of the store building, or in close proximity thereto, the children from the third sub-district, and apparently more of them, would have been compelled to travel the same piece of road, besides there is evidence tending to show that other ways or walks are available when necessary to travel between these points in bad weather.

One point made is that the petitioners from sub-district number four were entitled to withdraw their names from the petition, pending consideration thereof, upon showing that it was signed by them under misrepresentation, and for which proposition counsel cite 35 Cyc. 840-842. Their claim is that Smith who circulated the petition made some statement that the new school building would be located on one or the other of particular places mentioned, near the Dunkle Brothers store. But it is not pretended that the board of education made or authorized any such representation, nor that at or before the location was made by the board any such representation was made to said board. Smith, a witness for defendant, but who favored another location, swears that he did not represent to the petitioners that the building would be located at any particular place; on the contrary he says he told all who inquired where, that there were but two places, either in the Byron Smith bottom, or in the Ben McGinnis bottom, which latter place was actually chosen. But

assuming the law to be as claimed it is not pretended that pending the consideration of the petition plaintiffs or either of them requested to withdraw their names from the petition, or that the board was called upon to take action thereon.

Moreover, it is conceded that the statute, section 68, of chapter 45, does not in terms give voters the right to designate the location of school houses. But say petitioners were entitled to do so, they did not undertake to do so in their petition, except approximately, namely, "to be built on a good and suitable location at or near Dunkle Bros. store." We think the location selected by the board, and on which the building was constructed, considering all the facts and circumstances, was within the meaning of the words of the petition "at or near Dunkle Bros. store", and according to the witness Smith, who circulated the petition, the very place selected was one of the places mentioned to petitioners. Besides, the location made was approved by the County Superintendent of Schools. The words "at or near" are indefinite, and require only reasonable construction, as held with reference to termini designated in railroad charters. *Collier* v. *Union R. Co.,* 83 S. W. 155, 158, 113 Tenn. 96, citing Lewis on Eminent Domain, section 257; 1 Redfield on Railways, 413; *Fall River Iron Works* v. *Old Colony & F. R. R. Co.,* 87 Mass. 221; *Boston & P. R. Corporation* v. *Midland R. Co.,* 67 Mass. 340, 367; *Purifoy* v. *Richmond & D. R. Co.,* 108 N. C. 100, 12 S. E. 741. And in Virginia, it was held that "at or near" in an indictment for card playing rendered the indictment bad for uncertainty, as playing near a public place would not necessarily be a violation of the statute unless it appears so near that it too was rendered a public place by reason of its proximity. *Bishop* v. *Commonwealth,* 13 Grat. 785, 787. And the allegation in a petition that plaintiff's intestate was killed at or near a private crossing should be construed to mean that she was killed at a place on the track other than the crossing. *Davis' Adm'r.* v. *C. & O. Ry. Co.,* 25 Ky. L. Rep. 342, 75 S. W. 275, 277. When, therefore, plaintiffs petitioned for a school to be located at or near the Dunkle Bros. store, and considering the circumstances, the object to be obtained in point of health, the facts

with respect to the near by water courses, the patrons of the schools to be accommodated, and that the actual place selected is most centrally located, the language of the petition must be deemed to have been given a reasonable construction by the board. Certainly there was no abuse of its discretion in making the location.

Lastly, it is contended that upon appeal by plaintiffs or some of them from the action of the board to the county superintendent of schools, the controversy was settled and compromised, and that the action of the board, at least in proposing to sell the school building in sub-district number four, and to discontinue the school therein, constituted a breach of the alleged compromise agreement. It does appear that some proceeding by appeal was attempted by plaintiffs or some one of them, and that the matter was gone over by members of the board and some of the plaintiffs in the presence of the county superintendent; and there was some expression of opinion on the part of two members of the board of a willingness to continue the school in sub-district number four, but there was no record made of this proceeding, either by the county superintendent or by the board of education, and one member thereof actually announced that he would not consent or agree to this proposition, and shortly afterwards, on the same day, one of the other members notified plaintiffs or their counsel that he would not concur in the proposition to continue said school, and notified them that they had better proceed with whatever course they had determined upon to set aside the action of the board in relation to said school. No formal action was afterwards taken either by the superintendent of schools or by the board of education, nor was any further action taken by the plaintiff until the filing of the present bill, in July, 1916, after the new school building had been completed and the board had or was about to meet and appoint teachers, &c., for the new school, and with the result already indicated.

It is not pretended that what was said at the time of the meeting with the county superintendent was at a meeting of the board of education regularly called, and at which it could transact business. Section 32, chapter 45, of the Code, in-

hibits the members of the board from transacting any official business, except when regularly assembled as a board. And we held in *Cunningham* v. *Board of Education*, 53 W. Va. 318, that a board of education can perform official acts only when a quorum thereof are assembled as a board, by due notice to all the members, with the exception there noted, not covered by the present case. Moreover, we do not understand that it is contended seriously that the board as such was bound legally by anything said or done by any one or more of the members of the board on this occasion. Manifestly the expression of opinion by two members of a willingness to continue the school in sub-district number four was soon reconsidered and notice given to the plaintiffs and petitioners, and they remained silent thereafter until the filing of the present bill.

For the foregoing reasons we are of opinion that there is no merit in the bill, and that the injunction ought to be dissolved and the bill dismissed, and decree and mandate will so order.

*Reversed, injunction dissolved, bill dismissed.*