IREDELL COUNTY BOARD OF EDUCATION v. ZEB V. K. DICKSON.

(Filed 9 April, 1952.)

**1. Statutes § 5a—**

Matters necessarily implied by the language of a statute must be given
effect to the same extent as matters specifically expressed.

**2. Schools § 8a—**

The re-election of a teacher or principal must be performed in the same
manner in which he was originally elected and therefore re-election by the
school committee of a district is not effective until approved by the county
superintendent of schools and the county board of education. G.S. 115-112,
G.S. 115-354.

**3. Same—**

Dismissal of a teacher or principal by a county administrative unit is
not effective until approved by the county board of education and the prin-
cipal or teacher notified by registered mail of his dismissal or rejection,
thus approved, prior to the close of the current school term, it being re-
quired that all acts essential to the validity of the dismissal or rejection be
fully performed prior to the end of the school year. G.S. 115-359.

**4. Schools § 4b—**

A county board of education can exercise its powers only in a regular
or special meeting attended by a quorum of its members, and cannot per-
form its functions through its members acting individually, informally,
and separately.

**5. Same—**

There being no statutory provision to the contrary, a majority of the
members of a board of education constitutes a quorum. G.S. 115-37.

**6. Schools § 8a—**

A letter written by the county superintendent of schools "after consulta-
tion with the chairman of the county board of education" advising a prin-
cipal of the termination of his employment is not approval of the dismissal
by the county board of education, since the board may act only in a duly
constituted meeting. Resolution of the board passed after the end of the
school year, "supporting" any action of the local unit in regard to electing
a principal for the particular school, is not retroactive approval of the

attempted dismissal by the local unit and in no event could be effective since not passed prior to the close of the school term.

**7. Same—**

The administrative unit undertook to re-elect a principal for the ensuing year and later undertook to dismiss or reject him. Neither action was approved by the county board of education prior to the end of the school term. *Held:* Neither the attempted re-election nor the attempted dismissal is effective, and therefore the principal's original contract automatically continued in force for the ensuing school year.

APPEAL by plaintiff from *Sink, J.,* and a jury, at November Term, 1951, of IREDELL.

Summary proceeding in ejectment tried *de novo* in the Superior Court on the appeal of the defendant from the judgment of the justice of the peace.

The plaintiff, the Board of Education of Iredell County, presented the following evidence on the trial in the Superior Court:

1. The Central School District is located in the Iredell County Administrative Unit.

2. On 21 June, 1950, the School Committee of the Central School District, whose action was forthwith approved by the plaintiff and the county superintendent of schools, elected the defendant, Zeb V. K. Dickson, principal of the Central School for the following school year. The defendant accepted the employment, executed a written contract agreeably to it on forms furnished by the State Superintendent of Public Instruction, and actually served as principal of the Central School during the ensuing school term, which ended 18 May, 1951.

3. When the defendant began his service at the Central School, the plaintiff leased to him a nearby dwelling for a term coextensive with his employment as principal of the Central School. The defendant forthwith moved into the dwelling, and has continued in its actual physical possession ever since.

4. On 10 April, 1951, the School Committee of the Central School District met and "reelected (the defendant) as principal for the ensuing year." The committee immediately notified the defendant of its action, and the defendant straightway advised the committee that he accepted the extension of his employment. Neither the plaintiff nor the county superintendent of schools was ever informed of the re-election of the defendant by the district committee, or ever took any action in respect to it.

5. On 8 May, 1951, the School Committee of the Central School met, and passed motions "to rescind (its) action on the re-election" of the defendant and to terminate the defendant's "contract as . . . principal of Central School . . . at the end of the 1950 and 1951 school year."

6. The School Committee of the Central School gave the county superintendent of schools oral notice of its passage of the motion to terminate the defendant's contract as principal at the end of the school year. Two days prior to the close of the school term at Central School, to wit, on 16 May, 1951, the county superintendent of schools mailed a registered letter to the defendant, advising him that his contract as principal of Central School was to end "at the close of this school year." He did this "after consultation with the chairman of the county board of education."

7. On 11 June, 1951, the School Committee of the Central School District mailed the defendant a letter, notifying him to vacate the dwelling occupied by him on or before 15 July, 1951. The defendant refused to quit the premises.

8. On 23 July, 1951, the members of the county board of education met and "voted unanimously to go on record supporting the Central School Committee in whatever action they take in electing a principal for the Central School."

9. On 2 August, 1951, the plaintiff brought this summary proceeding in ejectment against the defendant to recover possession of the dwelling.

When the plaintiff rested its case, the trial judge allowed the motion of the defendant for a compulsory nonsuit and entered judgment accordingly. The plaintiff excepted and appealed, assigning the dismissal of the proceeding as error.

*Scott & Collier, Z. V. Turlington, and M. L. Nash for plaintiff, appellant.*

*Burke & Burke and J. G. Lewis for defendant, appellee.*

ERVIN, J. The defendant was elected principal of Central School for the school year beginning in 1950 and ending in 1951 in strict conformity to the statute now recompiled as G.S. 115-354. The plaintiff leased the dwelling to him for a term coextensive with his employment. Consequently the propriety of the compulsory nonsuit cannot be controverted unless the plaintiff's evidence shows that the employment of the defendant as principal of Central School came to an end prior to the institution of this proceeding in summary ejectment.

The answer to the problem presented by the appeal must be obtained from the statute cited above and the additional statute now recompiled as G.S. 115-359. No good purpose will be served by setting forth verbatim the somewhat awkward language in which these enactments are couched. Their meanings are to be found in what they necessarily imply as much as in what they specifically express. 50 Am. Jur., Statutes, section 242.

G.S. 115-354 provides, in substance, that where the school committee of a district in a county administrative unit elects a person to serve as

principal or teacher of a school of the district with the approval of both the county superintendent of schools and the county board of education and the principal or teacher so elected executes a written contract covering his employment upon official forms, the contract of employment automatically continues in force from year to year until one or the other of these alternative events occurs: (1) The principal or teacher is dismissed or rejected in the manner prescribed by G.S. 115-359; or (2) the principal or teacher is affirmatively re-elected to serve during the following school year, and fails to give notice to the county superintendent of schools of his acceptance of the renewed employment within ten days after notice of his re-election. *Davis v. Moseley*, 230 N.C. 645, 55 S.E. 2d 329; *Kirby v. Board of Education*, 230 N.C. 619, 55 S.E. 2d 322.

Although G.S. 115-354 does not undertake to specify in terms how a principal or a teacher is to be re-elected, it does imply that he is to be re-elected in the same manner in which he was originally elected. This is so for the very simple reason that one is re-elected when he is elected again or anew. G.S. 115-354 explicitly declares that the school committee of a district in a county administrative unit shall elect the principals and teachers for the schools of the district, "subject to the approval of the county superintendent of schools and the county board of education." Under this statute and G.S. 115-112, the election of a principal or teacher by the school committee of a district has no validity whatever until such election has been approved by both the county superintendent of schools and the county board of education. 56 C.J., Schools and School Districts, section 319.

When G.S. 115-359 is read aright, it provides these things by express declaration or necessary implication: The school committee of a district in a county administrative unit has power to dismiss or reject a principal or teacher of a school of the district as of the end of the current school year, but such dismissal or rejection is subject to the approval or disapproval of the county board of education and has no validity whatever until it has been approved by the county board of education. And even though the county board of education approves the action of the district school committee in dismissing or rejecting a principal or teacher as of the end of the current school year, the dismissal or rejection does not become effective unless the county superintendent of schools notifies the principal or teacher by registered mail of his dismissal or rejection prior to the close of the current school term.

Where a power is entrusted to a board, such as a county board of education, composed of different individuals, the board can exercise such power only in a regular or special meeting attended by at least a quorum of its members. It cannot perform its functions through its members acting individually, informally, and separately. *Bath v. Norman*, 226 N.C. 502,

39 S.E. 2d 363; *Bowles v. Graded Schools,* 211 N.C. 36, 188 S.E. 615; *O'Neal v. Wake County,* 196 N.C. 184, 145 S.E. 28; *London v. Comrs.,* 193 N.C. 100, 136 S.E. 356; *Turner v. Wellford Special Consol. School Dist. of Chicot County,* 192 Ark. 295, 91 S.W. 2d 285; *Landers v. Board of Education of Town of Hot Springs,* 45 N.M. 446, 116 P. 2d 690; *Ward v. Board of Education,* 80 W. Va. 541, 92 S.E. 741. Inasmuch as the statute creating county boards of education does not fix a different number, a majority of the members of a particular county board of education constitutes a quorum and can exercise its powers in meeting assembled. G.S. 115-37; *Hill v. Ponder,* 221 N.C. 58, 19 S.E. 2d 5; *S. v. Woodside,* 30 N.C. 104; *Decker v. School Dist., No. 2,* 101 Mo. App. 115, 74 S.W. 390.

The task of applying these rules to the case at bar must now be performed.

The plaintiff's evidence does not suffice to show that the defendant was dismissed or rejected in the manner prescribed by G.S. 115-359. Indeed, it indicates the contrary. To be sure, the district school committee undertook to dismiss or reject the defendant as of the end of the 1950-1951 school year. The action of the district school committee was without validity in law, however, because it was not approved by the county board of education in meeting assembled at any time before the close of the school term. For this reason, the contract employing the defendant to serve as principal of Central School was not terminated by the act of the county superintendent of schools in mailing the registered letter, even though such act may have been done after consultation with the chairman of the board of education acting individually and informally.

In reaching this conclusion, we have not overlooked the resolution passed by the county board of education in meeting assembled on 23 July, 1951, "supporting the Central School Committee in whatever action they take in electing a principal for the Central School." When it adopted this resolution, the county board of education undertook to give the district school committee *carte blanche* in the premises, and not to confer retroactive approval on the attempted dismissal or rejection of the defendant. The legal standing of the plaintiff would not be bettered a whit, however, if the construction last suggested could be justly placed upon the resolution. This is true because G.S. 115-359 contemplates that all acts essential to the validity of the dismissal or rejection of a principal or teacher as of the end of the school year must be fully performed prior to the close of the school term.

The plaintiff's evidence does not show that the defendant was affirmatively re-elected during the 1950-1951 school year to serve as principal of Central School for the following school year, and that he failed to give notice to the county superintendent of schools of his acceptance of the

renewed employment within ten days after notice of his re-election. Indeed, it discloses that the defendant was not affirmatively re-elected, and that in consequence his original contract automatically continued in force for the school year beginning in 1951 and ending in 1952. To be sure, the district school committee met on 10 April, 1951, and undertook to re-elect the defendant as principal "for the ensuing year." But neither the county superintendent of schools nor the county board of education was ever informed of the re-election of the defendant by the district school committee, or ever took any action with respect to it. Hence, his supposed re-election never acquired any validity in law.

For the reasons given, the judgment of nonsuit is

Affirmed.