STATE OF NORTH CAROLINA, on relation of James E. Long, Commissioner of Insurance, as Liquidator of the Investment Life Insurance Company of America, Plaintiff v. PETREE STOCKTON, L.L.P., a North Carolina Limited Liability Partnership; and JAMES M. ISEMAN, Defendants

No. COA96-1280

(Filed 19 May 1998)

### 1. Attorneys at Law § 41 (NCI4th)— attorney representing corporation—first duty owed to corporation

In an action by the liquidator of an insurance company against the attorneys who allegedly made misrepresentations to the Department of Insurance regarding the debt of merging companies, defendants' contention that they had no liability to one of the companies simply for performing acts at the direction of its officers and directors was summarily rejected. At the time of the conduct, it was clear that attorneys for a corporation owed their first duty to the corporation and, in the event of activity by officers and directors which could harm the corporation, attorneys for the corporation had a duty to protect the interests of the corporation.

### 2. Limitations, Repose, and Laches § 26 (NCI4th)— merger and acquisition of insurance companies—attorneys' negligence—statute of limitations

In an appeal arising from the dismissal of a common law negligence action arising from representations made by defendant attorneys during the merger and acquisition of insurance companies, the first statute of limitations determination is whether the complaint reflected that plaintiff's claims had expired before the filing of the petition which resulted in the liquidation order for one of the insurance companies. Since there was no contention that the statute of limitations on the negligence claim had expired prior to the filing of the petition, the determination became whether the complaint indicated that the action was instituted prior to the running of the statute of limitations on the claims or within two years of the entry of the order of liquidation, whichever period was longer. Because plaintiff's complaint was not filed within two years of the order of liquidation, it was saved only if the action accrued within three years prior to the filing of the complaint pursuant to N.C.G.S. § 1-15(c). N.C.G.S. § 58-30-130(b).

STATE Ex Rel. LONG v. PETREE STOCKTON, L.L.P.

[129 N.C. App. 432 (1998)]

**3. Limitations, Repose, and Laches § 26 (NCI4th)— merger and acquisition of insurance companies—attorneys' negligence—statute of limitations—continuous representation—claim not preserved**

A negligence claim against attorneys for representations made during the merger and acquisition of two insurance companies was not saved from the running of the statute of limitations by the doctrine of continuous representation where the actions complained of referred in the main to defendants' representation in regard to certain loans which closed on 3 January 1991; the complaint was filed on 1 April 1996 and would be barred by the statute of limitations in N.C.G.S. § 1-15(c); and plaintiff asserted that the doctrine of "continuous representation" preserves the claim. Although the Court of Appeals has never specifically adopted the application of "continuing course of treatment" principles to legal malpractice, plaintiff's claim fails even assuming that the doctrine is properly enlisted in this claim because the complaint did not allege continuous representation through 1 April 1993 and thus contained no allegation purporting to extend defendants' negligence beyond the loan closing date of 3 January 1991, the last negligent acts of defendants alleged in the complaint.

**4. Limitations, Repose, and Laches § 5 (NCI4th)— action by insurance commissioner—statutes of limitation—expressly applicable**

The common law doctrine of *nullum tempus occurrit regi* did not apply to an action by the Commissioner of Insurance as the liquidator of an insurance company. Although the State and its political subdivisions as a rule are exempt from time limitations in pursuing governmental functions, N.C.G.S. § 58-30-130(b) expressly includes a time limitation on actions brought by the Commissioner.

**5. Limitations, Repose, and Laches § 26 (NCI4th)— insurance company merger and acquisition—negligence of attorneys—statute of limitations—doctrine of adverse domination**

The trial court did not err in allowing defendants' motion to dismiss a claim of negligence against the attorneys involved in an insurance company merger and acquisition where plaintiff sought to avoid the statute of limitations with reliance upon the doctrine

of "adverse domination," which is an equitable doctrine tolling the statute of limitations in actions against attorneys who have assisted tortious actions of individuals in control of a corporation. Equitable doctrines do not toll statutes of repose; N.C.G.S. § 1-15(c) contains a four-year statute of repose which applies to a State liquidator through N.C.G.S. § 58-30-130(b) and bars plaintiff's action.

## 6. Appeal and Error § 550 (NCI4th)— decision of Supreme Court—filed after Court of Appeals case argued—applicable

A North Carolina Supreme Court decision setting forth an essential element of constructive fraud was applicable even though it was filed over two months after this case was argued before the Court of Appeals.

## 7. Fraud, Deceit, and Misrepresentation § 30 (NCI4th)— insurance company merger—constructive fraud—complaint insufficient

The trial court did not err by dismissing a claim for constructive fraud arising from the acquisition and merger of two insurance companies where plaintiff failed to allege that defendants sought a benefit to themselves through the alleged transactions.

## 8. Fraud, Deceit, and Misrepresentation § 24 (NCI4th)— insurance company merger—representations by attorneys—facilitating fraud—complaint properly dismissed

The trial court did not err by dismissing a claim for facilitating fraud pursuant to N.C.G.S. 1A-1, Rule 12(b)(6) in an action arising from representations made by attorneys during the acquisition and merger of two insurance companies where the claim for facilitating fraud constituted an extension of plaintiff's negligence claim, which was barred by the applicable statute of limitations.

## 9. Attorneys at Law § 41 (NCI4th)— merger and acquisition of insurance companies—misrepresentations by attorney—duty of loyalty

The trial court did not err by granting a Rule 12(b)(6) dismissal of a claim for "Breach of Duty of Loyalty" against an attorney involved in the merger and acquisition of two insurance companies where the complaint merely alleged that the attorney was "presumably" drawing upon information gained from his past rep-

resentation of one of the parties. The past client must show more than the potential for misconduct to state a claim against an attorney representing a client adversely against a former client.

Judge GREENE concurring.

Appeal by plaintiff from order entered 29 August 1996 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 21 May 1997.

*Hunter, Wharton & Stroupe, L.L.P., by V. Lane Wharton, Jr., for plaintiff-appellant.*

*Bell, Davis & Pitt, P.A., by William K. Davis and Stephen M. Russell, for defendant-appellee Petree Stockton, L.L.P.*

*Bailey & Dixon, L.L.P., by Gary S. Parsons, John M. Kirby, and Patricia P. Kerner for defendant-appellee James M. Iseman.*

JOHN, Judge.

Plaintiff State of North Carolina, on relation of Commissioner of Insurance James E. Long (Commissioner Long), acting as liquidator of the Investment Life Insurance Company of America (ILA), appeals the trial court's grant of defendants' motion to dismiss plaintiff's complaint for failure to state a claim. We affirm.

Background information as alleged in plaintiff's complaint is as follows: In 1985, four investors, including James E. Peterson (Peterson), a real estate developer and Winston-Salem resident, formed First Republic Financial Corporation (FRFC) as a holding company for purposes of procuring a South Carolina life insurance company, Investment Life and Trust Company (ILT). Peterson became the controlling shareholder of FRFC.

In 1989, Peterson and the other investors decided to purchase Triad Life Insurance Corporation (Triad), located in North Carolina, and to merge ILT into Triad. Acquisition of Triad required approval by the North Carolina Department of Insurance (the Department) pursuant to the "Insurance Holding Company System Regulatory Act" contained in Chapter 58, Article 19, of the North Carolina General Statutes.

The law firm of Petree Stockton & Robinson, counsel for Peterson in his personal and business matters since approximately

1983, was retained by FRFC and ILT to obtain the requisite approvals of the acquisition and merger. Defendant Petree Stockton, L.L.P. (Petree; the law firm), is the successor entity to Petree Stockton & Robinson and thus is a named defendant herein.

Defendant James Iseman (Iseman), at that time a Petree partner, was the responsible attorney and billing attorney for the acquisition and merger account. Attorneys Beth Hedberg (Hedberg), a former associate with Petree, and Eileen Taylor (Taylor) performed work on the account. Following certain filings with the Department by the law firm, acquisition of Triad by ILT was approved by the Department 1 December 1989.

At the time Triad was acquired, FRFC owed $4 million to Trust Company Bank of Atlanta, Georgia (Trust Company). This debt was personally guaranteed by Peterson and two other individuals sitting on the Board of Directors of both FRFC and ILT, with stock of ILT and Triad pledged as security for the debt. As a condition of allowing ILT to acquire Triad, Trust Company required modification of its loan agreement with Triad such that the loan would become due in full 30 June 1990.

Under the supervision of Iseman and with Taylor and Hedberg responsible for much of the work, Petree represented ILT and Triad beginning in early 1990 in connection with the proposed merger of the two companies, the surviving company to be called the Investment Life Insurance Company of America (ILA). Plaintiff's complaint alleged that a required "Form A" was filed with the Department, indicating

> that the shareholder, FRFC, was raising $10-12 million in capital with which it would pay off the debt to Trust Company, and [further representing] that ILA "will have no direct or indirect liability with respect to FRFC financing" if the Department approved the merger.

In analyzing the proposed merger, the Department determined that FRFC owed $2.25 million to ILA and raised this as an issue of concern. In the words of the complaint, the law firm

> responded that this debt would be repaid along with the Trust Company debt in the near future, and that "neither FRFC nor ILA anticipates that future transactions of this type (i.e., loan to FRFC) between ILA and FRFC will occur."

STATE Ex Rel. LONG v. PETREE STOCKTON, L.L.P.

[129 N.C. App. 432 (1998)]

Plaintiff's complaint further alleged that after approval of the merger by the Department, Petree was retained by ILA and FRFC "to work on"

> (1) rais[ing] $7 million or more in new capital to be contributed to ILA; (2) [payment of] $4.0 million to Trust Company on June 30, 1990, or to restructure the payment terms of the loan; and (3) find[ing] a method to allow the new company, ILA, to operate profitably.

An extension to 2 January 1991 of repayment of the Trust Company loan was obtained upon payment of $600,000. In addition, a proposed service agreement between FRFC and ILA was drafted "under which FRFC was to bear the operating costs of ILA to assure operating profits at the ILA level." Finally, the law firm began work on a private placement of preferred stock to raise capital.

By October 1990, the private placement effort had failed, and FRFC owed ILA an additional $600,000 in connection with the unsuccessful offering. According to plaintiff's complaint, notwithstanding the service agreement between FRFC and ILA, ILA was required to spend "more than $2 million which should have been the responsibility of FRFC."

In addition, plaintiff alleged Peterson and Edward Shugart (Shugart), president of ILA, met with John Googe (Googe) in November 1990. Googe, a friend and former client of Shugart, was seeking permanent financing for a $2 million note coming due with First Union National Bank, a debt incurred by Googe's company Air Lift Associates (ALA) in connection with operation of a private aircraft facility at Raleigh Durham International Airport (RDU). The three agreed that Peterson and Shugart would cause ILA to loan ALA $1.9 million to refinance its loan on the RDU facility. Simultaneously, ILA would loan $2.5 million to Southeastern Employers Benefit Services (SEBS), a second company owned by Googe, which company would use the money to buy $2.5 million of preferred stock in FRFC. This investment would allow FRFC to pay Trust Company $1.7 million and arrange a further modification of its loan, and to repay the $600,000 due from FRFC to ILA for expenses of the failed stock offering. Finally, FRFC would make dividend payments on the preferred stock to SEBS, thereby allowing SEBS to repay ILA so that, asserted plaintiff's complaint, "the transaction would be virtually a 'wash' for Googe."

STATE Ex Rel. LONG v. PETREE STOCKTON, L.L.P.

[129 N.C. App. 432 (1998)]

In December 1990, N.C.G.S. § 58-7-85(b)(3) provided that no life insurance company doing business in North Carolina might negotiate any loan to a director or officer of such insurer, either directly or indirectly, nor could such insurer make any loan to any other corporation in which such officer or director was substantially interested. Nonetheless, plaintiff's complaint charged, the proposed loan by ILA of $2.5 million was designed to be made indirectly to FRFC, a corporation controlled by Peterson, the Chief Executive Officer and member of the Board of Directors of ILA.

In addition, N.C.G.S. § 58-19-30(b)(2) provided that a loan or extension of credit by a North Carolina life insurance company to a third party, if made with the understanding that proceeds thereof were to be used to make investments in any affiliate of the insurer, required advance written notice to, and prior approval by, the Department.

On 20 December 1990, the Department instituted an inquiry into FRFC's proposed issuance of preferred stock, expressing concern about "the extent to which ILA might be required to service debt" of FRFC. In responding, Taylor and Hedberg allegedly misrepresented details of the proposed offering.

The complaint alleged, for example, that it was not disclosed that ILA would lend Googe $2.5 million to purchase the Series E preferred stock, nor that the loan of $2.5 million was tied to an additional $1.9 million loan by ILA to the same investor. As stated in plaintiff's complaint,

> [d]efendants knew, or in the exercise of proper care, should have known that the representations . . . were materially misleading

and that had the Department been aware of these facts, "it would not have allowed the transaction to go forward."

On 27 December 1990, the Department advanced additional questions regarding the loan. Taylor replied with a letter "purport[ing] to attach a summary of the terms of the Series E preferred stock." However, asserted plaintiff,

> the summary did not disclose that ILA would lend the investor the money used to purchase the preferred stock, or that the investment would not take place unless an additional $1.9 million loan occurred.

On or about 31 December 1990, Petree is alleged to have prepared an investment letter to be signed by Googe with respect to the issuance of $2.5 million of preferred stock by FRFC to Googe. Plaintiff's complaint maintained the letter represented

> that the purchaser of the preferred stock had no present or contemplated need to dispose of any portion of the stock to satisfy any existing or contemplated undertaking, need or indebtedness.

However, the complaint continued,

> [i]n preparing the investment letter to be signed by John Googe, the Defendants knew, or in the exercise of due care should have known, that an integral part of the deal was the need of John Googe to dispose of the preferred stock in order to repay the $2.5 million loan from ILA.

Further,

> [a]s of January 3, 1991, Petree Stockton was aware of [a] December 3, 1990 letter of [accounting firm] Ernst & Young, which indicated that [ALA] had a negative net worth, and that the net worth of SEBS was less than the amount of the loan made by ILA.

On 3 January 1991, ILA transferred $2.5 million to SEBS, which in turn transferred $2.5 million by wire to FRFC. Also on 3 January 1991, ILA loaned $1.9 million to ALA. FRFC used $1.6 million of the sum received to pay Trust Company. In addition, FRFC sent $77,345.26 to a company controlled by Peterson and $636,785 to ILA. Googe, SEBS and ALA subsequently defaulted on the loans made by ILA, causing ILA damages in excess of $10,000.

In March and December 1991, the Department forwarded inquiries to ILA regarding matters including issuance of preferred stock by FRFC to SEBS. Taylor assisted officers of ILA in responding, and, plaintiff alleged,

> knew or should have known that the responses were misleading and would result in a failure to disclose the true financial situation of ILA . . . .

According to the complaint, one response indicated "no shareholder or officer of FRFC or ILA benefitted personally in any way from the ILA loan or the SEBS loan."

On 2 April 1993, an order of liquidation was entered against ILA by the Superior Court of Wake County pursuant to Chapter 58, Article 30, of the North Carolina General Statutes, and Commissioner Long was appointed liquidator. Empowered by N.C.G.S. §§ 58-30-120(12) and (13) to prosecute actions on behalf of ILA, the State through Commissioner Long instituted the instant action against Petree, Iseman, Taylor and Hedberg. It appears Iseman and Hedberg ended their association with Petree prior to the filing of plaintiff's complaint.

Plaintiff alleged causes of action for negligence, constructive fraud, and facilitating fraud against all defendants and a claim for breach of the duty of loyalty against Iseman. By stipulation, dismissals were filed as to all defendants but Petree and Iseman (defendants). The latter moved to dismiss plaintiff's complaint under N.C.R. Civ. P. 12(b)(6) (Rule 12(b)(6)) for failure to state a claim upon which relief could be granted. Defendants' motions were allowed by the trial court 29 August 1996. Plaintiff filed notice of appeal to this Court 30 August 1996.

In reviewing the grant of a Rule 12(b)(6) motion, we must determine whether the plaintiff was entitled to relief "under any state of facts which could be presented in support of the claim." *Barnaby v. Boardman*, 70 N.C. App. 299, 302, 318 S.E.2d 907, 909 (1984), *rev'd on other grounds*, 313 N.C. 565, 330 S.E.2d 600 (1985). In considering such a motion, all well-pleaded allegations of the complaint are taken as true. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). It is also proper under a Rule 12(b)(6) motion to determine whether the applicable statute of limitations bars the plaintiff's claims if such bar appears on the face of the complaint. *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996).

The trial court's order granting defendants' motion did not specify the grounds therefor. However, two themes run through defendants' appellate briefs in support of the trial court's decision: 1) defendants have no liability to ILA simply for performing acts at the direction of ILA's officers and directors; and 2) in any event, the claims alleged in plaintiff's complaint are barred by the statute of limitations.

[1] We must summarily reject defendants' first argument. At the time of the conduct at issue, it was clear that attorneys for a corporation owed their first duty to the corporation. *See* Superseded N.C. Rules of

Professional Conduct (1985), Rule 5.10 ("[a] lawyer who represents a corporation or other organization represents and owes allegiance to the entity and shall not permit his or her professional judgment to be compromised in favor of any other entity or individual"). In the event of activity by officers and directors which could harm the corporation, attorneys for the latter had a duty to protect the interests of the corporation. *See* 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 24.6 and § 24.9 (4th ed. 1996).

Defendants' contentions regarding applicability of the statute of limitations, however, require discussion in detail.

### I. Negligence

[2] The statute of limitations applicable to plaintiff's first cause of action, negligence, is contained in N.C.G.S. § 1-15(c) (1996), which provides that actions for "malpractice arising out of the performance of or failure to perform professional services" must be brought within three years of the "accrual" of the cause of action. Specifically, G.S. § 1-15(c) states:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action . . . .

Additionally, regarding actions brought by a liquidator of a North Carolina insurance company, N.C.G.S. § 58-30-130(b) (1994) provides:

> The liquidator may, upon or after an order for liquidation, within two years or such subsequent time period as applicable law may

permit, institute an action or proceeding on behalf of the estate of the insurer upon any cause of action against which the period of limitation fixed by applicable law has not expired at the time of the filing of the petition upon which such order is entered.

Accordingly, under G.S. § 58-30-130(b), we must first decide whether the complaint reflects that plaintiff's claims expired before filing of the petition upon which the order of liquidation was entered. If not, we must then determine whether the complaint indicates the instant action was instituted prior to running of the statute of limitations period on the respective claims alleged therein, or within two years after entry of the order of liquidation, whichever period is longer.

There is no contention by defendants that the statute of limitations on plaintiff's negligence claim expired prior to filing of the petition upon which the order of liquidation was entered. Regarding the second inquiry, however, plaintiff's complaint indisputably was not filed within two years of the 2 April 1993 order of liquidation. Hence, plaintiff's negligence cause of action is saved only if it accrued within three years prior to the 1 April 1996 filing of the present complaint.

[3] As noted above, G.S. § 1-15(c) prescribes that a malpractice claim accrues "at the time of the occurrence of the last act of the defendant giving rise to the cause of action." An analysis of plaintiff's complaint reveals the actions complained of refer in the main to defendants' representation of ILA in the loans to Googe and his companies which closed 3 January 1991. Taking 3 January 1991 as the date of defendants' last alleged negligent act, therefore, plaintiff's claim would be barred. In response, however, plaintiff first asserts that the doctrine of "continuous representation" preserves its negligence claim.

Our Supreme Court has recently adopted the "continuing course of treatment" doctrine with respect to medical malpractice actions. *Horton*, 344 N.C. at 137, 472 S.E.2d at 781 (1996). Under this rule, running of the statute of limitations period is tolled during the time a physician continues to treat a patient in relation to the original act, omission, or failure which gave rise to the claim. *Id.* To take advantage of the doctrine, a patient must allege the physician could have taken further action to remedy damage occasioned by the original negligence. *Id.* at 140, 472 S.E.2d at 782.

However, this Court has considered, but never specifically adopted, application of "continuing course of treatment" principles to

instances of alleged legal malpractice. *See Sharp v. Teague*, 113 N.C. App. 589, 594-95, 439 S.E.2d 792, 795-96 (1994); *see also Hargett v. Holland*, 337 N.C. 651, 656-58, 447 S.E.2d 784, 788-89, *reh'g denied*, 338 N.C. 672, 453 S.E.2d 177 (1994). Moreover, assuming *arguendo* without deciding that the doctrine is properly enlisted in instances of alleged legal malpractice, plaintiff's negligence claim herein nonetheless fails.

First, a simple allegation of continuous representation standing alone does not suffice. In order for running of the statute of limitations regarding the original negligent act to be tolled, it must appear that the continuous representation relates to that original act. *Horton*, 344 N.C. at 137, 472 S.E.2d at 781.

The complaint at issue did not allege continuous representation of ILA through 1 April 1993 by defendants in connection with the questioned loans, and thus contained no allegation purporting to extend defendants' negligence beyond the loan closing date of 3 January 1991. *See id.* Further, plaintiff proffered no allegation that defendants could have remedied damages caused by their representation of ILA in the Googe loans. *See id.*

According to plaintiff's complaint, the loans closed 3 January 1991, and thereafter, in March and December of 1991, defendants assisted management of ILA in preparing false and misleading responses to questions posed by the Department regarding the Googe loans. Of the 115 paragraphs set out in plaintiff's complaint, however, only the following three otherwise related to defendants' representation of ILA subsequent to 1991:

89. Throughout 1992, Petree Stockton continued to assist Peterson in running ILA contrary to the interests of ILA and its policyholders, which allowed the liabilities of ILA to increase, and which deepened its insolvency.

90. Throughout the latter part of 1992 and the early part of 1993, the Defendant Taylor and Petree Stockton assisted Peterson in attempting to negotiate sales of ILA to other insurance companies on terms which were injurious to ILA and which were designed to relieve Peterson from his personal liability and to obtain compensation for him personally.

91. Petree Stockton and the Defendant Taylor continued to represent Peterson's interests against the interests of ILA, all the while charging ILA, until at least April 2, 1993.

Indeed, the last paragraph cited was the sole allegation of defendants' representation of ILA beyond the critical date of 1 April 1993. Moreover, the allegations regarding defendants' conduct in 1992 and 1993 contained in paragraphs eighty-nine and ninety-one—that Petree "continued" to hold the interests of Peterson above those of ILA—are so broad as to fail to give notice of a claim. *See* N.C.R. Civ. P. 8(a)(1) (pleading must give "notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved"). Rather, they appear to have been included only for the purpose of attempting to bring plaintiff's claim within the "continuous representation" doctrine. Finally, paragraph ninety in effect constitutes surplusage in that plaintiff alleged no damages based upon the alleged attempted negotiations.

In short, the last negligent acts of defendants alleged in plaintiff's complaint were those regarding the Googe loans and defendants' representation of ILA in relation to inquiries by the Department regarding those loans in March and December 1991. Plaintiff's cause of action for malpractice was thus alleged to have accrued before 1 April 1993, *i.e.*, more than three years before suit was instituted, and the doctrine of continuous representation does not save plaintiff's claim.

**[4]** Plaintiff, citing the common law doctrine of *nullum tempus occurrit regi* ("time does not run against the king"), next maintains the statute of limitations cannot run against plaintiff State on relation of Commissioner Long. Plaintiff is mistaken.

As a general rule, the state and its political subdivisions are indeed exempt from time limitations in pursuing governmental functions "unless the pertinent statute expressly includes the State." *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 8-9, 418 S.E.2d 648, 653-54 (1992). However, assuming *arguendo* plaintiff's pursuit of the instant action against defendants on behalf of ILA constitutes a governmental function, *see contra, State of N.C. ex rel. Long v. Alexander & Alexander*, 711 F. Supp. 257, 262 (E.D.N.C. 1989), G.S. § 58-30-130(b) expressly includes a time limitation on actions brought thereunder by the Commissioner. Plaintiff's argument is therefore unfounded.

**[5]** Finally, plaintiff seeks to rely upon the doctrine of "adverse domination." This equitable doctrine has been cited as tolling the statute of limitations in causes of action against attorneys who have assisted tortious actions of individuals in control of a corporation. 2

Mallen & Smith, § 21.9 at 768. Plaintiff's reliance on the doctrine is unavailing.

G.S. § 1-15(c) contains a four year statute of repose, and equitable doctrines do not toll statutes of repose. *Stallings v. Gunter*, 99 N.C. App. 710, 716, 394 S.E.2d 212, 216 (citing Restatement (Second) of Torts § 899, Comment (g) (1979)), *disc. review denied*, 327 N.C. 638, 399 S.E.2d 125 (1990). Assuming *arguendo* the doctrine of adverse domination applies in this jurisdiction, plaintiff's malpractice action nonetheless is barred by the statute of repose. Plaintiff's complaint was filed 1 April 1996, and thus was not initiated within four years of "the last act of the defendant giving rise to the cause of action" (determined above to be December 1991 at the latest). *See* G.S. § 1-15(c).

Plaintiff's protest that the statute of repose contained in G.S. § 1-15(c) does not apply to actions brought by a state liquidator rings hollow. G.S. § 58-30-130(b) provides that a liquidator may bring suit on behalf of an insurer "within two years or such subsequent time period as applicable law may permit." The "applicable law" referred to is that applying to the insurer's cause of action, in this case ILA's malpractice action, governed by G.S. § 1-15(c).

To conclude, plaintiff's negligence claim is time-barred on the face of its complaint, and the trial court did not err in allowing defendants' motion to dismiss as to that claim.

We next turn to plaintiff's remaining three causes of action: constructive fraud, facilitating fraud, and breach of the duty of loyalty.

### II. Constructive Fraud

[6] A constructive fraud complaint must allege facts and circumstances

> (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

*Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950). Further, an essential element of constructive fraud is that "defendants sought to benefit themselves" in the transaction. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 667, 488 S.E.2d 215, 224 (1997).

STATE Ex Rel. LONG v. PETREE STOCKTON, L.L.P.

[129 N.C. App. 432 (1998)]

We note parenthetically that *Barger* was filed by our Supreme Court 24 July 1997, over two months after the instant case was argued before this Court. Nonetheless, the *Barger* rule applies herein because the instant case was pending on appeal when *Barger* was announced. *See State v. Rivens*, 299 N.C. 385, 391, 261 S.E.2d 867, 871 (1980) ("[t]he rationale for applying a decision to other cases pending on appeal appears to be the realization that the pending case could just as easily have been the case in which the new rule was announced").

**[7]** Plaintiff's complaint alleged defendants were

the beneficiaries of the wrongdoing because they knew that the continued existence of ILA and FRFC was necessary for them to be able to receive their fees, and in early 1991, Petree Stockton received over $100,000 from ILA for legal services in connection with the failed stock offering and the sale of preferred stock by FRFC for the $2,500,000 loan by ILA through SEBS.

Plaintiff failed to allege, however, that defendants *sought* to gain a benefit through its actions, and Count II (constructive fraud) contained no allegation that ILA would have ceased to exist or defaulted on its legal fees had defendants behaved in accordance with the applicable standard of care.

Although Count III, the facilitating fraud claim, set out allegations that defendants' outstanding legal fees would not be paid if the loan transactions did not occur, these may not be fairly considered as incorporated into Count II of plaintiff's complaint. The latter expressly provided that "[t]he allegations contained in numbered paragraphs 1-98 are incorporated" into Count II, which ended at paragraph 103. The allegations in Count III to the effect that defendants sought a benefit were contained in paragraph 106 of plaintiff's complaint. The complaint thereby expressly provided that the allegations contained in paragraphs 104-115 of the complaint were *not* incorporated into Count II. *Cf. Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973) ("[a] contract . . . encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion"); *Board of Education v. Dickson*, 235 N.C. 359, 361, 70 S.E.2d 14, 17 (1952) ("[the] meanings [of statutes] are to be found in what they necessarily imply as much as in what they specifically express").

Therefore, because Count II lacked any allegation that defendants sought a benefit to themselves through the alleged transactions, it fails to state a claim for constructive fraud. Accordingly we hold the trial court did not err in dismissing this claim.

### III. Facilitating Fraud

[8] Plaintiff's complaint characterized the third claim set out therein as "facilitating fraud." A cause of action for facilitation of fraud, a type of conspiracy, has been recognized in this jurisdiction. *Nye v. Oates*, 96 N.C. App. 343, 346-47, 385 S.E.2d 529, 531-32 (1989). When a cause of action lies for injury resulting from a conspiracy,

> all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement.

*Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987).

However, upon careful review, we conclude plaintiff's Count III, denominated "Facilitating Fraud," constituted in sum an extension of plaintiff's negligence claim set forth in Count I, by alleging essentially a "negligence or professional malpractice claim." *See Sharp*, 113 N.C. App. at 597, 439 S.E.2d at 792 (plaintiff's fraud claims as alleged failed to meet particularity requirements for allegation of fraud and constituted "nothing more than claims for negligence"), and *Childress v. Hayes*, 77 N.C. App. 792, 795, 336 S.E.2d 146, 148 (plaintiff's breach of fiduciary duty claim essentially comprised "a negligence or professional malpractice claim"), *disc. review denied*, 316 N.C. 375, 342 S.E.2d 892 (1986). Therefore, because we have held plaintiff's negligence claim in Count I was barred by the applicable statute of limitations, the claim alleged in Count III of the complaint is likewise barred.

### IV. "Breach of Duty of Loyalty"

[9] Plaintiff's final claim, directed at defendant Iseman, was denominated "Breach of Duty of Loyalty." Plaintiff alleged Iseman, whose association with Petree terminated at some point following the Googe loan transactions, undertook to represent Peterson and Shugart when ILA later filed suit against the two regarding the allegedly fraudulent loans. Plaintiff's complaint maintained:

> ILA has been damaged as a result of the conduct of the Defendant Iseman, in that Shugart and Peterson have been assisted in resisting the claims of ILA by Iseman, and his new firm, who presumably are drawing upon confidential information received during

his representation of ILA to assist in the defense of Peterson and Shugart.

To state a claim against an attorney representing a client adversely against a former client, "the past client must show more than the potential for misconduct." 2 Mallen & Smith, § 16.23 at 484.

> A cause of action is not established merely by showing that the attorney had access to confidential information or that the representation was adverse. The former client must establish not only that the attorney possessed and misused the client's confidences, but also that the fiduciary breach was a proximate cause of the injury.

*Id.; see also Watts v. Cumberland County Hosp. System,* 75 N.C. App. 1, 9-10, 330 S.E.2d 242, 247-50 (1985), *rev'd on other grounds,* 317 N.C. 321, 345 S.E.2d 201 (1986) (discussing malpractice action for breach of confidentiality by health care providers).

Plaintiff's complaint herein merely alleged Iseman, in undertaking to represent Peterson and Shugart, was "presumably" drawing upon information gained from his past representation of ILA. As such, plaintiff alleged only the "potential for misconduct," and failed to state a cause of action. The trial court therefore did not err in granting defendants' motion as to plaintiff's breach of the duty of loyalty claim against Iseman.

In sum, plaintiff's claims set out in Counts I and III are barred by the applicable statute of limitations and/or statute of repose. Further, plaintiff's assertions of fraud in Count II and "breach of duty of loyalty" on the part of Iseman in Count IV fail to state a claim. Accordingly, the trial court's grant of defendants' Rule 12(b)(6) motion is affirmed.

Affirmed.

Judge GREENE concurs with separate opinion.

Judge WALKER concurs.

Judge GREENE concurring with separate opinion.

I concur with the majority, but write separately to explain why I believe that Count III of the plaintiff's complaint, which the plaintiff denominates as a claim for facilitating fraud, merely states a claim for negligence.

A claim for relief should "state enough to give the substantive elements of [the] claim." *Sutton v. Duke*, 277 N.C. 94, 105, 176 S.E.2d 161, 167 (1970); W. Brian Howell, *Shuford on North Carolina Civil Procedure* § 9-3 (4th ed. 1992) (noting that Rule 9(b) requires the essential elements of fraud to be set forth affirmatively in the complaint); *see also* N.C.G.S. § 1A-1, Rule 9(b) (Supp. 1997) (requiring all fraud claims to be stated with particularity). An essential element of facilitating fraud is that the defendant and a third party agreed to defraud the plaintiff. *Nye v. Oates*, 96 N.C. App. 343, 346-47, 385 S.E.2d 529, 531 (1989) ("[O]ur law . . . permits one defrauded to recover from anyone who facilitated the fraud *by agreeing for it to be accomplished*." (emphasis added)).

In this case, the plaintiff's complaint alleges that the defendants "assisted, . . . facilitated, aided and abetted" Peterson and others in actions which the defendants "knew" would harm ILA, an entity which the defendants also represented, and that the defendants "intentionally did not advise ILA" of these actions. These allegations do not, however, state that the defendants agreed to defraud ILA, or that they had a "meeting of the minds" with Peterson or others to defraud ILA. *See Black's Law Dictionary* 67 (6th ed. 1990) (defining "agreement" as a "meeting of two or more minds; a coming together in opinion or determination; . . . concord of understanding and intention between . . . parties with respect to . . . future facts or performances"). As the plaintiff's complaint does not allege the essential element of agreement, the plaintiff has failed to allege a claim for facilitating fraud. Count III of the plaintiff's complaint therefore merely alleges a claim for negligence.